IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 10-cv-02270-PAB

JEFFREY ELKINS,

      Applicant,

v.

ERIC FRANKLIN, Warden, Lexington Assessment Correctional Center,
COLORADO DEPARTMENT OF CORRECTIONS, and
THE ATTORNEY GENERAL OF THE STATE OF COLORADO,

      Respondents.

---

**ORDER ON APPLICATION FOR A WRIT OF HABEAS CORPUS
PURSUANT TO 28 U.S.C. § 2254**

---

This matter comes before the Court on Applicant Jeffrey Elkins' Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 (Doc. # 3)[1], which the Respondents answered (Doc. # 27). Applicant filed a traverse (Doc. # 34). Having considered the same, along with the pertinent portions of the State Court record (Doc. # 24), the Court concludes that the Application should be denied.

**I.    Background**

Applicant was charged with two counts of menacing, possession with intent to distribute a controlled substance (cocaine), possession of a controlled substance and a special offender charge in Case No. 03CR984 in the District Court for the City and

---

[1]Because Applicant appears *pro se*, the Court construes his filings liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972). However, the Court does not serve as his advocate. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

County of Denver, Colorado.[2] The Colorado Court of Appeals summarized the facts in Applicant's case as follows:

> On January 11, 2003, Denver police officers were conducting undercover surveillance at a motel in northeast Denver based on information they had received from a first-time confidential informant that a tall, thin black man, approximately twenty-five years old and nicknamed "Wood," was expected to make a delivery of drugs.
>
> They observed from their unmarked cars a silver SUV pull into the motel parking lot. The driver left the vehicle and walked to a motel stairwell. He then moved into an area where he was not visible for approximately three to five minutes.
>
> One of the officers thought he recognized the driver as defendant and reported that information to other officers on scene.
>
> The driver returned to his SUV, and two officers pulled their unmarked car behind him, attempting to block him in the parking space. One of the officers stepped from the car, and as he did, the SUV's brake lights came on. The officers' emergency lights were activated. The SUV backed up, hitting the officers' car and knocking one officer to the ground. The SUV accelerated forward, where it high-centered on a retaining wall. The driver fled the vehicle on foot, while the passenger remained in the SUV at gunpoint.
>
> In the chase that ensued, officers observed the fleeing suspect reach into his waistband and pull out a handgun, which he dropped. The suspect then stumbled, fell, and was taken into custody. A bag of crack cocaine was located in his front right pocket. An additional bag of crack cocaine, over $600 in cash, and a handgun were recovered from the scene. The driver was identified as defendant.
>
> When questioned, defendant acknowledged the narcotics belonged to him and that the passenger, later identified as S.G., had no knowledge of the drugs. S.G. was questioned as well and claimed he was simply getting a ride from defendant and never observed any drugs or a handgun.

*See People v. Elkins*, No. 04CA1179 (Colo. App. Nov. 2, 2006) (unpublished opinion).

---

[2]This general introductory background is largely taken from the uncontested statement of facts in the Respondents' Answer.

At trial, a jury convicted Applicant of possession with intent to distribute a controlled substance and possession of a controlled substance. In a later proceeding, the Court convicted Applicant of being a habitual criminal and sentenced him to 48 years imprisonment on the count of possession with intent to distribute and a concurrent term of 6 years imprisonment on the possession count.

Applicant filed a direct appeal to the Colorado Court of Appeals. On November 2, 2006, the appellate court rejected three of his claims, but agreed with his assertion that the conviction for possession should merge with the conviction for possession with intent to distribute. *See People v. Elkins*, No. 04CA1179 (Colo. App. Nov. 2, 2006) (unpublished opinion). The appellate court ordered the trial court to vacate Applicant's conviction and sentence for unlawful possession of a controlled substance. *Id.* The Colorado Supreme Court denied certiorari review on May 29, 2007.

On March 10, 2008, Applicant filed a post-conviction motion pursuant to Colorado Rule of Criminal Procedure 35(c), arguing that he was provided ineffective assistance of counsel. The trial court summarily denied Applicant's motion on April 29, 2008. Applicant filed an appeal, and the Colorado Court of Appeals affirmed the trial court on July 16, 2009. *See People v. Elkins*, No. 08CA1165 (Colo. App. July 16, 2009). The Colorado Supreme Court denied certiorari review on April 5, 2010.

Applicant filed the instant Application for a Writ of Habeas Corpus on September 16, 2010. In the Application, Applicant asserts three claims for relief:

(1) He received ineffective assistance of trial counsel because his attorney abandoned him during a critical point in his trial testimony;

(2) The trial court lacked jurisdiction to try him because the charging information was insufficient; and

3

>(3) Applicant was denied due process because the jury was not required to unanimously agree upon which of the two alleged quantities of drugs he possessed for each count.

On September 30, 2010, Magistrate Judge Boyd N. Boland ordered the Respondents to file a pre-answer response limited to addressing the issues of timeliness and/or exhaustion of state court remedies. Respondents filed their pre-answer response on October 21, 2010. Respondents asserted that Applicant had failed to exhaust all but one of his claims in the state court, and that these unexhausted claims were procedurally defaulted. Applicant filed a reply on December 20, 2010.

On March 2, 2011, the Court entered an order finding that Applicant failed to exhaust his second and third claims in the state courts. Therefore, these claims were dismissed as procedurally defaulted. Nonetheless, finding that Applicant's first claim was exhausted, the Court directed Respondents to file an Answer that fully addressed the merits of this claim.

## II.     Legal Standard

In the course of reviewing state criminal convictions in federal habeas corpus proceedings, a federal court does not sit as a super-state appellate court. *See Estelle v. Mcguire*, 502 U.S. 62, 67-68 (1991); *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990). "When a federal district court reviews a state prisoner's habeas application pursuant to 28 U.S.C. § 2254 . . . . [it] does not review a judgment, but the lawfulness of the petitioner's custody *simpliciter*." *Coleman v. Thompson*, 501 U.S. 722, 730 (1991) (internal quotations and citations omitted). The exhaustion of state remedies requirement in federal habeas cases dictates that a state prisoner must "give the state

courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).

Because Applicant filed his Application after April 24, 1996, the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 (the "AEDPA"), the AEDPA governs the Court's review. *Cannon v. Mullin,* 383 F.3d 1152, 1158 (10th Cir. 2004) (citing *Rogers v. Gibson,* 173 F.3d 1278, 1282 n. 1 (10th Cir. 1999)). Under the AEDPA, a district court may only consider a habeas application when the applicant argues that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

Title 28 U.S.C. § 2254(d) provides that a writ of habeas corpus may not be issued with respect to any claim that was adjudicated on the merits in state court unless the state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Claims of legal error and mixed questions of law and fact are reviewed pursuant to 28 U.S.C. § 2254(d)(1). *See Cook v. McKune*, 323 F.3d 825, 830 (10th Cir. 2003). The threshold question pursuant to § 2254(d)(1) is whether Applicant seeks to apply a rule of law that was clearly established by the Supreme Court at the time his conviction became final. *See Williams v. Taylor,* 529 U.S. 362, 390 (2000). Clearly established

federal law "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Id*. at 412. Furthermore,

> clearly established law consists of Supreme Court holdings in cases where the facts are at least closely-related or similar to the case *sub judice*. Although the legal rule at issue need not have had its genesis in the closely-related or similar factual context, the Supreme Court must have expressly extended the legal rule to that context.

*House v. Hatch*, 527 F.3d 1010, 1016 (10th Cir. 2008).

If there is no clearly established federal law, that is the end of the Court's inquiry under § 2254(d)(1). *See id*. at 1018. If a clearly established rule of federal law is implicated, the Court must determine whether the state court's decision was contrary to or an unreasonable application of that clearly established rule of federal law. *See Williams*, 529 U.S. at 404-05.

> A state-court decision is contrary to clearly established federal law if: (a) "the state court applies a rule that contradicts the governing law set forth in Supreme Court cases"; or (b) "the state court confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a result different from [that] precedent." *Maynard* [*v. Boone*], 468 F.3d [665,] 669 [(10th Cir. 2006)] (internal quotation marks and brackets omitted) (quoting *Williams*, 529 U.S. at 405). "The word 'contrary' is commonly understood to mean 'diametrically different,' 'opposite in character or nature,' or 'mutually opposed.'" *Williams*, 529 U.S. at 405 (citation omitted).
>
> A state court decision involves an unreasonable application of clearly established federal law when it identifies the correct governing legal rule from Supreme Court cases, but unreasonably applies it to the facts. *Id*. at 407-08. Additionally, we have recognized that an unreasonable application may occur if the state court either unreasonably extends, or unreasonably refuses to extend, a legal principle from Supreme Court precedent to a new context where it should apply.

*House*, 527 F.3d at 1018.

The Court's inquiry pursuant to the "unreasonable application" clause is an objective one. *See Williams*, 529 U.S. at 409-10. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather that application must also be unreasonable." *Id*. at 411. "[A] decision is 'objectively unreasonable' when most reasonable jurists exercising their independent judgment would conclude the state court misapplied Supreme Court law." *Maynard*, 468 F.3d at 671. "[O]nly the most serious misapplications of Supreme Court precedent will be a basis for relief under § 2254." *Id*.

Claims of factual error are reviewed pursuant to 28 U.S.C. § 2254(d)(2). *See Romano v. Gibson*, 278 F.3d 1145, 1154 n.4 (10th Cir. 2002). Section 2254(d)(2) allows a court to grant a writ of habeas corpus only if the state court decision was based on an unreasonable determination of the facts in light of the evidence presented. Pursuant to § 2254(e)(1), the Court must presume that the state court's factual determinations are correct and Applicant bears the burden of rebutting the presumption by clear and convincing evidence. "The standard is demanding but not insatiable . . . [because] '[d]eference does not by definition preclude relief.'" *Miller-El v. Dretke*, 545 U.S. 231, 240 (2005) (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003)).

Finally, the Court "owes deference to the state court's *result*, even if its reasoning is not expressly stated." *Aycox v. Lytle*, 196 F.3d 1174, 1177 (10th Cir. 1999). Therefore, the Court "must uphold the state court's summary decision unless [an] independent review of the record and pertinent federal law persuades [the Court] that

its result contravenes or unreasonably applies clearly established federal law, or is based on an unreasonable determination of the facts in light of the evidence presented." *Id*. at 1178.  "[T]his 'independent review' should be distinguished from a full *de novo* review of the applicant's claims." *Id*.

## III.    Discussion

Applicant's first claim is the only claim remaining at issue in this action.  In this claim, he asserts that he received ineffective assistance of counsel because counsel abandoned him during a critical stage of the trial.  Applicant alleges that, after he decided to testify in his own defense during trial, defense counsel moved to withdraw from his case on ethical grounds.  The motion to withdraw was denied, but defense counsel indicated to the trial court that he was concerned with Applicant's potential testimony because counsel would not present evidence that he did not "believe in." Supplement to Application (Doc. # 4) at 7.  Thereafter, it was decided that Applicant would be permitted to testify in a narrative fashion and defense counsel would not direct his testimony.  Applicant argues that "there is no evidence on the record or otherwise to support the belief that [Applicant] intended to perjure himself on the stand" and that he received ineffective assistance of counsel because defense counsel did not "guide [his] testimony or argue his testimony in closing and the jury would surely notice." *Id.* at 8.

With respect to Applicant's allegations of ineffective assistance of counsel, the Colorado Court of Appeals concluded the following:

> Defendant contends that trial counsel did not prepare him to testify and instead, abandoned him on the stand during his testimony by not questioning him, but making him testify as to his version of the events in a

> narrative fashion. Defendant contends this was tantamount to a total deprivation of his right to counsel. We reject this contention.
>
> The record shows that counsel informed the court that, in light of defendant's decision to testify, he was faced with an ethical dilemma concerning defendant's testimony. Counsel proposed that he question defendant concerning preliminary matters and then ask him if there was anything he wanted the jury to know about the night of the offense. The court approved this strategy, finding that counsel was faced with an ethical dilemma and that the proposed resolution was not unethical, fulfilled counsel's responsibility to defendant, and did not constitute ineffective assistance. *See People v. Schultheis*, 638 P.2d 8, 12 (Colo. 1981). Defendant testified in accord with the arrangement made by counsel.
>
> We agree with the trial court's finding and conclude that counsel's assistance was not ineffective and defendant was not deprived of counsel. Indeed, counsel devised a method that preserved defendant's right to, and choice whether to, testify. Having made that choice, defendant was allowed to present his version of the events while not violating counsel's professional duty. Thus, the court did not err in denying defendant's postconviction motion on this claim. *See Kailey v. Colo. State Dep't of Corr.*, 807 P.2d 563, 567 (Colo. 1991) (if evidence presented to court supports its findings and judgment, the judgment will not be disturbed on review).

*People v. Elkins*, No. 08CA1165 at 4-5.

It was clearly established when Applicant was convicted that a defendant has a right to effective assistance of counsel. *See Strickland v. Washington*, 466 U.S. 668 (1984). To establish that his counsel was ineffective, Applicant must demonstrate both that counsel's performance fell below an objective standard of reasonableness and that counsel's deficient performance resulted in prejudice to his defense. *See id.* at 687-88. In addition, "[j]udicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689. There is a "strong presumption" that counsel's performance falls within the range of "reasonable professional assistance." *Id.* It is Applicant's burden to overcome

this presumption by showing that the alleged errors were not sound strategy under the circumstances. *See id.* Under the prejudice prong, Applicant must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. If Applicant fails to satisfy his burden with regard to either prong of the *Strickland* test, his ineffective assistance of counsel claim must be dismissed. *See id.* at 697.

In *United States v. Cronic*, 466 U.S. 648, 658 (1984), the United States Supreme Court held that "in circumstances that are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified," prejudice will be presumed. The Court defined three exceptions to *Strickland* where it is appropriate for a court to presume prejudice: (1) where there is a "complete denial of counsel" or denial at a "critical stage" of the litigation; (2) where counsel "entirely fails to subject the prosecution's case to meaningful adversarial testing"; and (3) where "although counsel is available to assist the accused during trial, the likelihood that any lawyer, even a fully competent one, could provide effective assistance is [very] small." *Cronic*, 466 U.S. at 659-60. The Court has subsequently recognized *Cronic* as a "narrow exception" to *Strickland*. *Florida v. Nixon*, 543 U.S. 175, 190 (2004).

Applicant argues that, pursuant to the first *Cronic* exception, prejudice should be presumed in his case because he was deprived of counsel at a critical stage of his trial. Supplement at 9. However, the Supreme Court has consistently limited the presumption of prejudice to cases where counsel is *physically* absent at a critical stage. *See Penson v. Ohio*, 488 U.S. 75, 88 (1988) (applying *Cronic* where defense counsel

erroneously moved to dismiss any appeal leaving the defendant "completely without representation during the appeals court's actual decisional process"); *White v. Maryland*, 373 U.S. 59, 60 (1963) (presuming prejudice where defendant pleaded guilty at a preliminary hearing before he was appointed counsel).  Here, it is clear that defense counsel was physically present at all stages of litigation, including during Applicant's testimony.  Therefore, prejudice cannot be presumed under the first *Cronic* exception.  *See id.*

Applicant also cannot demonstrate that counsel "entirely fail[ed] to subject the prosecution's case to meaningful adversarial testing."  *Cronic*, 466 U.S. at 659-60.  Having reviewed the record, it appears that trial counsel was diligent in his defense of Applicant.  Counsel filed and argued several pre-trial motions, including a motion to suppress statements made by Applicant to the police and a motion for disclosure of a confidential informant.  *See* Trial Court Transcript, Vol. 7.  During trial, counsel conducted extensive voir dire, vigorously cross-examined prosecution witnesses, and clearly presented the defense arguments during closing argument.  *See* Trial Court Transcript, Vol. 9 & 10.  Counsel's efforts on Applicant's behalf are additionally reflected in the jury's verdict, given that the jury acquitted Applicant on two charges of menacing and was unable to reach a verdict on the special offender enhancements.  Accordingly, the second *Cronic* exception does not apply here.  *See Cronic*, 466 U.S. at 659-60; *see also Bell v. Cone*, 535 U.S. 685, 697-98 (2002) (drawing a distinction between a failure to oppose the prosecution throughout an entire proceeding and a failure to do so at specific points, and concluding that a failure at specific points will not trigger

presumption of prejudice); *McDowell v. Kingston*, 497 F.3d 757, 763-64 (7th Cir. 2007) (holding that although defense attorney had defendant testify in a narrative form, *Cronic* did not apply because counsel subjected the prosecution's case to adversarial testing).

Applicant additionally makes no argument that the "the likelihood that any lawyer, even a fully competent one, could provide effective assistance is [very] small." *Cronic*, 466 U.S. at 659-60. Therefore, the third *Cronic* exception also does not apply. Accordingly, Applicant has failed to demonstrate that prejudice should be presumed in his case under any of the *Cronic* exceptions. *See Cronic*, 466 U.S. at 659-60.

Next, Applicant argues that the facts of his case are analogous to the facts in *United States v. Midgett*, 342 F.3d 321, 326-37 (4th Cir. 2003). In *Midgett*, defense counsel did not want the defendant to take the stand because counsel did not believe defendant's version of the events of the crime. *Id.* at 323. Defense counsel therefore moved to withdraw during trial because the defendant asserted his right to testify. *Id.* After holding an *ex parte* conference with defense counsel, the trial court forced the defendant to choose between testifying or retaining counsel. *Id.* at 324. The defendant chose to retain his counsel and was therefore denied the right to testify in his own defense. *Id.* In its resulting decision vacating the defendant's conviction, the Fourth Circuit held that the trial court "err[ed] . . . given that the court effectively mirrored defense counsel's error by deciding that Midgett's testimony would be perjurious. . . . the court merely believed the defendant's potential testimony would be dramatically outweighed by other evidence, a situation that did not warrant the extreme sanction imposed by the court." *Midgett*, 342 F.3d at 327.

However, the situation presented in *Midgett* did not occur in Applicant's case. Instead of being forced to choose between testifying and being represented by counsel, Applicant was permitted to present his testimony to the jury and was also allowed to maintain counsel. Defense counsel questioned Applicant about his background and prior convictions and then allowed Applicant to present his account of the events that occurred the day of the crime in a narrative fashion. The Court finds that the holding of *Midgett* is not applicable to this case because Applicant was not forced to make the same untenable choice as the *Midgett* defendant. *Id.*

In addition, the Supreme Court has noted that the "right to counsel includes no right to have a lawyer who will cooperate with planned perjury." *Nix v. Whiteside*, 475 U.S. 157, 173 (1986). As such, defense counsel's refusal to present a defendant's false testimony does not deprive the defendant of effective assistance of counsel. *Id.* at 175-76. Indeed, other courts have found that, when confronted with a defendant who insists on providing testimony that defense counsel deems to be untruthful, the defendant may be required to testify in a narrative form. *See, e.g., Horne v. Horel*, 2010 WL 934106, at *25 (N.D. Cal. Mar. 15, 2010) (unpublished opinion); *DePallo v. Burge*, 296 F. Supp.2d 282, 291-92 (E.D.N.Y. 2003); *Benedict v. Henderson*, 721 F. Supp. 1560, 1562-64 (N.D.N.Y 1989).

Finally, Applicant argues that the court in *United States v. Litchfield*, 959 F.2d 1514 (10th Cir. 1992), was confronted "with a set of facts that are materially indistinguishable from the facts of this case and its decision should have been applied here." Docket No. 4 at 9. In *Litchfield*, the Tenth Circuit evaluated a claim that the

defense counsel had an actual conflict of interest. In that case, defense counsel and the trial judge had an *ex parte* discussion during trial in which counsel expressed concern to the court about a "perceived conflict between his ethical duty to his client and to the court." *Litchfield,* 959 F.2d at 1517. Counsel indicated to the court that he was concerned because he felt there would be "many, many inherent inconsistencies" with the defendant's proposed trial testimony. *Id.* Although not clear, it appears that the trial court permitted defendant to testify. Later, on habeas review, the defendant argued that the *ex parte* discussion between the trial court and defense counsel was improper and that "counsel should have withdrawn as counsel rather than make the disclosure to the district court." *Id.* at 1518.

In evaluating the conflict of interest claim in *Litchfield*, the Tenth Circuit noted that "[i]n order to establish an actual conflict, [a defendant] must demonstrate 'as a threshold matter . . . that the defense attorney was required to make a choice advancing his own interests to the detriment of his client's interest'" and found that the defendant had failed to make this showing. *Id.* (citing *United States v. Acevedo*, 891 F.2d 607, 610 (7th Cir. 1989)). The Tenth Circuit then rejected the defendant's argument that "[a]n attorney must clearly know rather than suspect fraud on the court before advising the court" and, instead, found that the "situation presented counsel with a difficult dilemma, and we cannot say that his *ex parte* discussion with the district court was a violation of his ethical duty or evidence of a conflict of interest." *Id.*

It is not clear what applicability the holding of *Litchfield* has to this case. To the extent Applicant asserts that his attorney had an actual conflict of interest, Applicant

has failed to demonstrate that his defense attorney was "required to make a choice advancing his own interests to the detriment of his client's interests." *Id.* Applicant has failed to allege any facts in support of an actual conflict of interest claim. *See id.*

Applicant also argues that *Litchfield* stands for the proposition that defense counsel must have had a "firm basis" for believing that Applicant was going to testify untruthfully before refusing to help him. Docket No. 4 at 12. *Litchfield* does not support Applicant's argument. The *Litchfield* court rejected a similar argument, finding it sufficient that defense counsel in that case "had reason to believe, based upon his own experience with defendant, that some of the testimony counsel would elicit upon examination of defendant would be false." *Litchfield,* 959 F.2d at 1518. In this case, Applicant's counsel informed the trial court, outside of the presence of the jury, that he was moving to withdraw for "ethical purposes" and because he would not "put on evidence that [he did] not believe in." Trial Court Transcript, Vol. 10, p. 67, 69. The holding of *Litchfield* does not appear to require that counsel provide anything to the trial court beyond a reasonable belief that the defendant is going to provide false testimony. *Litchfield,* 959 F.2d at 1518. Further, unlike *Litchfield,* defense counsel in this case did not engage in *ex parte* discussions with the trial judge and did not disclose any confidential information to the trial court. *See id.* Accordingly, the Court finds that the holding of *Litchfield* is not applicable here.

Finally, Applicant also fails to show that he was prejudiced by being required to testify in narrative form. He does not identify any testimony that he would have given in a question-and-answer format that he did not give in his narrative testimony, and he

does not identify any additional deficiencies in counsel's performance.  He has not demonstrated a reasonable likelihood that the outcome of the proceeding would have been different if he had not provided narrative testimony at trial.  *See Strickland*, 466 U.S. at 694.  Therefore, Applicant cannot show that he was prejudiced by counsel's decision.  *See Rompilla v. Beard*, 545 U.S. 374, 405 (2005) (Kennedy, J., dissenting) (noting that the defendant bears the burden of proving prejudice); *see also Strickland*, 466 U.S. at 697 ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.")

Accordingly, considering all of the above, the Court finds and concludes that the state court's conclusion was not contrary to, and did not involve a reasonable application of, clearly established federal law.  Therefore, Applicant is not entitled to relief on this claim.

**IV.    Conclusion**

Accordingly, it is ORDERED as follows:

1.    Applicant Jeffrey Elkins' Application For a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 (Doc. # 3) is denied.

2.    No certificate of appealability will issue because Applicant has not made a substantial showing of the denial of a constitutional right.

3.    This case is dismissed with prejudice.

DATED August 17, 2011.

BY THE COURT:

s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge